Is there a phone ringing or something? I thought I heard a phone ringing. Alright, Counsel, if you'd come forward. Mr. McGuire, you're going to argue for Advanced Concepts. Yes, Your Honor. Good morning, and may it please the Court. This case is about whether an indemnity obligation owed by Dr. Harold Rafuse to Act I was clearly and unambiguously wiped away by a general merger provision in a subsequent agreement, despite carve-out language in that same agreement that must have or at a minimum could have reasonably been intended to preserve and reference that same indemnity obligation. Here, the trial court erred by finding that this 2011 Accord and Satisfaction Agreement clearly and unambiguously extinguished the indemnity obligation that's found in the 2008 Pledge Agreement. But this conclusion is fundamentally flawed because it ignores or improperly nullifies the carve-out language that is clearly found in the Accord and Satisfaction. And by doing so, it violates several principles of contractual interpretation. We've claimed from the outset of this case that the carve-out language that's in the Accord and Satisfaction clearly and unambiguously was actually intended to reference and preserve this indemnity obligation from the prior agreement. And the reason why we have argued that is for three reasons. One, the original indemnity obligation was intended for Dr. Rafuse, who was an owner of Act I, to, after his interests in the company were purchased, going forward, he was going to have 50 percent responsibility for what the Pledge Agreement referred to as contract actions. Effectively, this is a government contractor who gets audited by the federal government, sometimes a decade, in this particular case, as it turned out, a decade after the fact. And so because of this lengthy timeframe and attenuated connection between the audit timeframe and when Dr. Rafuse was separating himself from the company, they built in this indemnity provision to say, if in the future the company gets audited for a contract action, you are responsible for 50 percent. And so there's this term, contract action, in the Pledge Agreement. The Accord and Satisfaction that's executed in 2011 has this carve-out language that specifically says that Dr. Rafuse is not being released from any responsibility or liability for actions by third parties. And there's this connection where both of these terms use the term action, the carve-out also uses the term cause of action, but it clearly contemplates an indemnity-style relationship where Rafuse is indemnifying Act I for causes of action or actions by third parties, in this case, the federal government's audit. The district court, as you know, said that it wasn't clear what the carve-out agreement referred back to, and it could have been more specific and referred back to this paragraph 23 in the Pledge Agreement. What do you say to that? I mean, you know, you do have an Accord and Satisfaction provision that, you know, says this is the end of it all and everything else is settled and dismissed, and then you've got the carve-out agreement that doesn't specifically refer back to what it's carving out. Your Honor, I do agree that this provision could have been clearer. However, there are two aspects of that. Number one, I think the more obvious answer to this is that shows that this language is ambiguous, and that the Accord and Satisfaction is ambiguous. It does not clearly and unambiguously lead to the complete elimination of the prior indemnity obligation, which is what the trial court found. So when the trial court says it could have been phrased more clearly, that's exactly the—it is an alternate point for us that there is at least some ambiguity that existed with this language that certainly did not justify judgment on the pleadings, which is what happened here. But improved drafting skills doesn't equate to ambiguity, though. You'll agree with me. I certainly do, Your Honor. The reason here why, again, this carve-out language is important is several reasons. Number one is that it clearly contemplates that after the Accord and Satisfaction, Mr. Rayfuse, Dr. Rayfuse, is going to have some responsibility or liability for something. So that's where I think the trial court didn't quite take it to the next step, which is the trial court took it to say the Accord and Satisfaction released everybody from everything, including this prior indemnity obligation. But that can't be true because the carve-out specifically says that Dr. Rayfuse is not being released for a responsibility or liability for actions by third parties. Now, what does that phrase mean? That is the entire crux of this case. We contend that that refers back to the indemnity obligation. And at a minimum, the existence of that language alone tells this Court that the contract can't clearly and unambiguously wipe away the prior indemnity obligation. The other aspect here that's interesting, Your Honor, is that, and this is also why we believe that to the contrary, it actually clearly and unambiguously does expressly reference and refer to this prior indemnity obligation, is because all of Dr. Rayfuse's other responsibility or liability to Act I has been released. It was released in the original purchase agreement in 2008. That purchase agreement had broad release language that said Dr. Rayfuse is being released from all responsibility and liability. The exception was the pledge agreement that was executed at the exact same time that has this indemnity obligation. So he has a full release then. Now, fast forward three years later, you have this Accord and Satisfaction that, again, also says we're including broad releases. We have, obviously, this merger provision. But, again, there's this carve-out language. But, you know, it's not being released, Dr. Rayfuse's responsibility or liability for actions by third parties. So by process of elimination, that carve-out language can only refer to the indemnity obligation because every other responsibility or liability Dr. Rayfuse might possibly hypothetically have was otherwise released in these documents. Critically, neither the trial court nor Dr. Rayfuse at any point either in the trial court or in the briefing in this case before this court has identified what potential responsibility or liability is reflected in that carve-out. And so to us, at a minimum, it shows that there is an ambiguity that requires a trial before a fact finder to determine what the meaning of that language is and how the Accord and Satisfaction relates to the pledge agreement. It certainly is not clear and unambiguous that the Accord and Satisfaction, again, entirely wiped away the indemnity obligation. And in concluding as it did, the trial court violated multiple principles of contractual interpretation. For instance, terms in the same agreement must be read together. Well, here the trial court gave full effect to the merger provision, which is a general provision. It does have broad language, but it gave full effect to the merger provision without considering how that merger provision actually plays and integrates with the carve-out that is in the same document. So, for instance, one of the first analysis should have been, is it possible for the responsibility or liability that is referenced in the carve-out to be a contractual liability? Indeed, we believe that that's the only interpretation, but is it possible that that responsibility or liability is a contractual responsibility? If it is, then the merger agreement that does say all prior agreements are now being superseded, well, that's clearly even a carve-out to that. You can't, so we don't think that the trial court properly, you know, analyzed the merger agreement in connection with it and its interplay with the carve-out. The second thing is, the second principle is that specific language governs over general language. That's a basic principle as well. Here we have a general, broad merger provision that says all agreements are superseded, but instead we have specific language in the carve-out provision that says, Dr. Rafuse has some responsibility or liability going forward for actions by third parties. That is specific language that should control over the general language of the merger agreement. And third, terms should be read together in an agreement that harmonized them, such that no term is left, is superfluous, or is nullified. And here, the trial court's interpretation completely nullifies the carve-out. As I've already alluded to, other than the indemnity obligation, what other responsibility or liability would Dr. Rafuse have in the carve-out? And again, the trial court doesn't try to answer that question. Dr. Rafuse and his counsel don't try to answer that question. And so, for these reasons, we believe that at a minimum, there is an ambiguity here in these agreements that requires reversal of the trial court's ruling that instead the court in satisfaction clearly and unambiguously extinguished the indemnity obligation. We've also asked the court to, if the court concludes that this language is ambiguous, we do believe that actually, not only the trial court should not be reversed, this court should render judgment. And here's why. Because if we have an ambiguous contract, which we believe is clear here, this language is subject and reasonably susceptible to more than one meaning. If we have an ambiguous contract, the court can analyze parole evidence. Well, in connection with the trial court proceedings, Act I submitted summary judgment evidence, because there was a cross-motion for summary judgment in these proceedings. And it was a deposition transcript from Dr. Rafuse asking him his interpretation of the carve-out. Was discovery closed by the time these motions were ruled on? I don't believe so, Your Honor. Well, if we say it's ambiguous, though, wouldn't that open the door to further discovery prior to cutoff date and trial? Your Honor— I mean, how do we know that we have the whole record if the district court said it's unambiguous and I rule in favor of your opponent? How do we know that we now have a complete record to consider and resolve ambiguity? Well, what I would say, Your Honor, I mean, this is a very limited record in the first place. There was limited discovery taken. And one thing that I also want to note is that, for instance, Dr. Rafuse—so we submitted his deposition transcript as part of the parole evidence in the summary judgment hearing. But Dr. Rafuse could have submitted controverting declaration or something that controverted or somehow explained his deposition testimony to, again, controvert that now undisputed summary judgment evidence. So the fact that there could be some additional discovery, I believe—I mean, at any time, summary judgment could be appropriate. It doesn't have to be at the close of discovery. So—and ordinarily, people want it to be at the close of discovery so that you don't get surprised by something that happens later. But here, Dr. Rafuse had the opportunity, in response to the motion for summary judgment that Act I filed, to submit a declaration saying, I misspoke or I didn't actually really mean that, because his deposition testimony confirmed specifically, when asked, what does the carve-out language mean? When it says you have a responsibility or liability for actions by third parties, what does that mean? When he was asked that question, he acknowledged that, number one, it had to be a preexisting responsibility or liability. And, number two, he agreed that it was the indemnity obligation from the pledge agreement. But your motion in the district court argued that the contractual language was clear and that you were entitled to judgment having it enforced, right? It doesn't argue, oh, and the alternative, it's ambiguous, but we win even if it's ambiguous. Was that the argument that you made? Your Honor, we did take the position from the very beginning that it was clear and not ambiguous. That's clear. However, in our reply brief, addressing the counter-interpretation offered by Dr. Rafuse and his counsel, we did raise this exact issue of, hey, alternatively, Judge, you can find ambiguity. Also, we referenced, and this is related obviously to their claim regarding waiver of our arguments somehow, the International Turbine case of the Fifth Circuit specifically contemplates a situation in which parties don't have to always argue alternative ambiguity. Just simply proposing directly conflicting interpretations of the same contract language can clearly at least reserve that position on appeal. And would you also, if we were to find it ambiguous, the language ambiguous, would that not also apply to Dr. Rafuse's claim seeking indemnity? I think that motion was denied. Or is that a separate matter? I believe it's a separate matter, Your Honor. And the reason why is because that agreement, it's a separate agreement that provides him indemnity, is obviously much more limited. It's much more limited because, and there's actually a bright line that that attempts to address, between when is the liability that's incurred, what operating events of the company, is it before or after this transaction? That's the basis of that indemnity. Okay. Thank you, Mr. Dwyer. Thank you, Your Honor. You have reserved five minutes of rebuttal. We will hear from Mr. Kerr at this time on behalf of Dr. Rafuse. Thank you, Your Honor. Even though my name is spelled K-E-R, we do pronounce it Carr. Carr. Okay. I'm sorry. My apologies. I noticed that the builder of this building down there on the photograph was a Norman K-E-R. Must be some family member. Judge, before I actually get into my argument, may I have a moment of personal privilege to remind the court that today is the anniversary of the bombing by the Japanese of Pearl Harbor, and that as a combat veteran of two wars myself, I am very attuned to reminding everybody that it is through the blood of patriots and military that we have preserved our constitutional republic and making situations like this possible. Thank you very much. Long years ago, when I was much younger and much more aggressive and actually much more less discerning in taking cases, I undertook representation in an employment relation case. But the facts were not in my favor. But even so, I thought, well, I might be able to fashion some shadow of a plausible argument and pull a rabbit out of the hat. When the jury went back to the jury room and we were out in the hallway, the judge came up to me and he said something sage. He said, John, you almost made a silk purse out of a sow's ear. And that, I believe, is the situation that we have in this case. Mr. McGuire and his client are seeking to pull a rabbit out of the hat. And how do I mean that? The appellant is in exactly the same position I was in in my employment related case. The facts are not on his side. And specifically, two essential facts work against him. And that first fact is that the accord and satisfaction agreement by its clear language does away with every prior agreement. What does the carve-out include? If that's true, why are we talking about a carve-out provision? Well, Judge, actually the analysis of the accord and satisfaction has to be a two-step analysis. First of all, what is the underlying purpose of the accord and satisfaction? That is to do away with all the prior agreements and enter a brand-new agreement. The carve-out does not have any language of indemnity. It doesn't have any language of survival. It doesn't have any language of revival. It creates a new obligation under the specific terms of that carve-out in that accord and satisfaction. So that first fact they can't get past is that the accord and satisfaction does away with everything prior. And the second thing is that the carve-out, although it's there and we don't dispute that obviously, it does not provide what Mr. McGuire would hope that it would say. It does not provide any indemnity. It does not provide any relation back. It does not provide any survival or revival. If you take a look at Paragraph 7 of the accord and satisfaction, that is the controlling paragraph here, because it does also, it is what establishes that everything else has gone away. Paragraph 4 has the carve-out, and I'll get to that. But in Paragraph 7, it says, This agreement constitutes and contains the final accord and satisfaction among the parties and final satisfaction of all payment obligations, dah, dah, dah. But then it says, The parties enter this agreement in reliance upon the promises and covenants contained herein, not anywhere else. And it goes on to state that any promise or representation of a warranty whatsoever that is not contained in this agreement is not binding. The prior language of the pledge indemnity agreement is not contained in here. In fact, just like the question was asked, well, didn't the judge say that it was, the trial judge, didn't it say that it could have been more explicit? Well, yes, it does. And, in fact, had they wanted to include the pledge indemnity obligation, how simple would it have been to say the pledge indemnity obligation is retained? They didn't do that. It could have been just that. Well, we have a lot of cases on our docket where if the parties had drafted documents differently, we wouldn't have a case. So in this case, we have to decide whether it's clear enough to rule on as summary judgment or whether it's ambiguous enough to warrant parole evidence and either further discovery or possibly even a trial. But the provision that you're talking about refers to it preserve the so-called carve-out, including but not limited to any actions known or unknown that may have existed at the time of or prior to the execution of the purchase agreement. Why would that not, maybe let me flip it over. Why does that preclude the prior indemnity obligation? Your Honor, I think this court is bound by the language that is used in this agreement. You can't inject anything else unless you, in fact, determine this is ambiguous. If you do, then you can do that. But I assert to you that this language is clear in this respect. This sets out a new obligation to Harold Rafuse, the old one gone away. This one simply says if there is an action by a third party, then Harold Rafuse does not release his responsibility and or liability. But let's take a deeper look at that language. If there was a third party action to which Harold Rafuse may be liable, he would have due process rights and be a necessary party in that action. If he is on an indemnity only, he's not a necessary party in the underlying action, and he is only liable should the Act I be held responsible under an indemnity obligation. So at any rate, that language is clear and unambiguous. Why would the new language, the carve-out, if I agree with your argument, why would the new language in the carve-out agreement not include monies owed as a result of a government audit some years later? Well, to answer that one, Judge, I think a good way to look at that would go back to that pledge agreement indemnity, and it spells out specifically a laundry list of things. This simply says if there is a cause of action by a third party unrelated to the purchase agreement, and it's established that something is due, remember the due process rights of Harold to come in and defend in that third party action. If that be the case, then Harold would have to pay. Okay, say, for instance, there was a, well, I can't think of an example. I'm sorry. I'm just thinking if the government shows up in this case, as in this case, many years later, and says, oh, by the way, we've detected the following insufficiencies or improprieties in terms of money that's owed, and it happened in 2005, why would not the language from the carve-out provision, which you say is the new obligation, why would that not encompass? Well, first of all, there's no action by a third party. Well, there's a claim. Back to due process again. There's a claim, whether or not it's a lawsuit or not, or whether it's certainly the government putting on notice that it is making a claim for monies that are owed. Based upon conduct that occurred when Dr. Refuse was involved in 2004 or 2005. Well, it is not a cause of action by a third party. I know I'm repeating myself here, and I apologize for that. I'm trying to answer you in this respect. The language of that carve-out is insufficient to bring back anything that dealt with audits, claims. You've got to look just to that language, first of all, and determine if it's unambiguous, and I believe that you can only find that that language is unambiguous. And in doing so, then the exact action that is being presented has to fit within that in order to hold Harold Refuse liable for anything. Another thing, this action is an action by Harold to prevent an invalid claim against him. Maybe I'm getting too far ahead in my questioning, and I don't mean it to sound hypothetical because it could, in fact, be the case. But the district court ruled only that the prior indemnity provision in the purchase agreement could not be enforced. Correct. Because of the accord and satisfaction. Correct. Okay, but it didn't address whether or not, as in my question . . . You know, the district court seemed to be concerned about the carve-out not identifying what it referred back to. Is that your problem with it? Absolutely, Judge. I think what the court was saying was exactly what I've already said. If it had been intended to include the prior language or the agreement before, it would have said that the indemnity agreement in the pledge agreement is part of this. Because, remember, it also, in paragraph 7, says that . . . Acknowledge that any promise, representation, or warranty whatsoever expressed or implied, written or oral, which is not contained herein is not binding. So the court was, in that situation, Judge, I believe was saying, Look, you should have been more explicit. In fact, he used that word. You should have been more explicit. I mean, in Dr. Refue's deposition, he seemed to admit that the carve-out agreement referred back to the paragraph 23 in the pledge agreement. Yes, but that was parole evidence that was not admitted into the case. The judge specifically said he did not consider any parole evidence. And even though Harold did, in fact, say that, that is not conclusive either, because it's not the specific intentions of the whatever might be in the mind of the parties. It's what does the language actually say and mean. Well, if we say this is . . . You know, a judge will do almost anything to say I don't have an agreement. Yes, sir. Because we know what happens. It goes back to the trial court, and each side gets up and says, Well, this is what I meant by it. And if you have a trial like that, apparently Dr. Refue would testify like he did in his deposition. Sure. But he would also explain as well, too. Now, Dan makes a good point that we didn't file anything in objection because it was, in my way of looking at it, it was parole evidence, it was not admissible because the language was clear. If we send it back, we will have an opportunity to challenge that questioning and answer in the deposition. All right. I might remind the court of this, and I've cited the Foothills Capital Corporation case in the brief, and that's from the Virginia Supreme Court, and it says that under wording . . . I'm sorry, when interpreting plain language, and I understand you've got to be called upon to determine whether or not it's ambiguous, but this is not ambiguous. But when interpreting plain language, the court cannot read into the contract language, which will add to or take away from the meaning of the words already contained therein. One point also about Mr. McGuire's comment about the ambiguity, and he relies upon the judge saying, well, he could have been more explicit. And so, consequently, there's now this ambiguity. This court in certain underwriters at Lloyd's London, again cited in my brief, stated ambiguity will not be found simply because the parties or lawyers or even the judge comes up with a different interpretation. That doesn't equate to ambiguity. And one more. I've got a little bit of time, but I've skipped over some, so let me . . . I want to discuss a little bit more about the ambiguity, and I do want to go back to the . . . In raising an ambiguity first on appeal, that should not be heard at all. Mr. McGuire did not plead ambiguity in any of his pleadings. He filed in the state court, but didn't refile in the federal court. And in his pleadings, he did not urge any kind of ambiguity. During the arguments in this case, while he tried to argue that some of the parole evidence should be admitted, he did not raise a direct argument of ambiguity. So, consequently, he's raising it now on appeal for the first time, and that should be dismissed. There's . . . I've got five minutes. Let me find my notes. I skipped around on that one. I've already said that the accord and satisfaction is clear and unambiguous. The argument that the carve-out can only relate back to the prior agreements is . . . Frankly, I think it's fantasy, total imagination, because the language of the carve-out does not state anything about any kind of revival, survival, relation back, any kind of correlation. And it does not use any of the language of the prior indemnity agreement in the pledge agreement. So, consequently, it cannot be automatically referring to the prior indemnity. All right. I'd like to move on to the claim for the attorney's fees. In my argument, I showed that Niggle, Mr. Niggle, was not a party to the accord and satisfaction. So, consequently, his portion of this relies solely on the post-closing indemnity agreement. As between Act I and Dr. Rafuse, only the accord and satisfaction is there. So, any kind of indemnity obligation that we might urge against Act I is gone. But Mr. Niggle, in his individual capacity, is still on the hook. In that indemnity agreement, it sets out three separate and distinct categories of claims for which he is going to stand for indemnity. One of them is ending all loss or damage suffered for non-fulfillment of any covenant by buyers or Niggle contained in the purchase agreement, or any certificate, document, instrument delivered to the seller pursuant thereto in connection therewith. The post-closing agreement was part of that initial purchase agreement scenario. He is not performing, and we are asserting that he didn't. It should apply. The main one, though, is the third one, any and all. Any and all means any and all. Successful actions, suits, proceedings, claims, demands, assessments, judgment, costs or expenses, including without limitation of legal fees and expenses, incident to any of the foregoing. And that foregoing is that list I just read to you in paragraph three. Or incurred investigating or attempting to avoid or impose or to oppose the imposition thereof or in enforcing this indemnity. This lawsuit was brought as a seeking declaratory judgment to show that the claim, the breach of contract was an invalid claim, and we are seeking to avoid that. This indemnity for Mr. Niggle applies to that situation. I'm ready for any questions. All right. Thank you very much. Thank you. We will hear rebuttal now. Counsel, you have reserved five minutes. Thank you, Your Honor. Mr. Carr is a very likable man, and in his time he was not able to tell you any potential meaning for the term responsibility or liability for actions by third parties in the Carr vow. Can I offer you one? So here's what I don't understand about this Carr vow provision. So it has two halves to it, looks like to me, like half one, half two. Yes, sir. One says liabilities, any cause of action known or unknown by third parties unrelated to the purchase agreement. So that is pretty clear to understand what that means. So it has to be an action by a third party. It can't be an action by a party like you. And then it has the including. That's the second half. And I take that to be a subset of the first one, right? That is so if you think of, like, here's the actions by the third parties, that includes, you know, the not limiting the actions done or unknown that existed at the time prior to the agreement. So I don't really understand how it helps you if that's the proper reading of it, right? You have sort of a big set, which is the first half, and then including is the second piece. Yes, sir. We're actually not really focusing our argument on the second half. Okay. So help me understand why you would nonetheless fit into the first half. Well, because the government audit is an action or a cause of action by a third party. Yeah. Help me with the cause of action. What would be the cause of action by the government? Well, we actually addressed this in our brief. Under Virginia law, Virginia law actually defines a cause of action not as a formal claim that is made but actually as a circumstance of fact and law that creates a formal claim. And so in that sense, when this is saying cause of action, it's not referring to a formal lawsuit. And, again, it's a collection of the facts and law that does create and give rise to a claim, whether or not it's formally asserted. And, of course, I mean, the demand letter and the subsequent correspondence that Act I received from the government certainly falls within the scope of that term. But also this accordance satisfaction doesn't define the term cause of action. So while obviously, I mean, there are ways to discern what that term means in this context, especially where, as Your Honor referenced, the second half of this mentions actions. Again, this term itself is also ambiguous in that sense where we need to know what falls within this. But I do believe that obviously that the government's claim that was made against Act I that resulted in this payment, and that's what this dispute's about, is Dr. Rafi's responsibility for half of that payment. That is a cause of action. It falls within the scope of that first half of this carve-out. Maybe this just goes to your ambiguity point. But if you look at the first sentence in paragraph four, it has a whole – it doesn't say cause of action. It's got like, I don't know, 10, 15 different things, claims, damages, blah, blah, blah, lots of stuff. And so – but then cause of action is the only thing that gets accepted out. You see what I mean? So there's a big release that releases like 15 things, and then there's cause of action is the only thing that gets accepted out at the end. Yes, sir. I completely understand that. And again, that's why is that language in its relationship to the other language in the accord and satisfaction, is it reasonably susceptible to more than one interpretation? We submit that it is. And I think that demonstrates the point. I would like to reference very quickly this issue of the cross-appeal for attorney's fees very briefly. First off, Dr. Rafi has actually never pled for attorney's fees in this circumstance. His pleading actually sought attorney's fees if he also owed indemnity to Act I. So the circumstances we're actually faced here today with don't even fall within his pleading initially. So I think his claim fails for that reason, first off. Number two, this post-closing indemnity obligation was intended to cover events that occurred based, or I should say liabilities that occurred based on operating events after this transaction in 2008. So effectively, anything that happened while the company was operating prior to 2008 is one category. And liabilities and debts that occur based on operating events of the company after 2008 is in a separate category. That's the distinction here. And Dr. Rafi's, in this particular case, is not being sued because he has a direct debt for the liabilities of the company. That's not why he's being sued. There's a claim made because he owes a contractual indemnity obligation to Act I. So that contractual indemnity obligation is completely outside the bounds of the post-closing indemnity agreement. Okay. Thank you, counsel. We appreciate your briefing in this case and your arguments offered to the panel here today. The case will be considered submitted. And with that, the court will be adjourned.